**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| LYNDA HUFFMAN, | § | Civil Action No. _____ |
| *Plaintiff* | § | |
| | § | |
| D.R. HORTON - TEXAS, LTD. | § | |
| d/b/a D.R. HORTON, | § | JURY TRIAL DEMANDED |
| *Defendant* | § | |

_____

### PLAINTIFF'S ORIGINAL COMPLAINT

_____

COMES NOW Plaintiff Lynda Huffman ("Plaintiff") and files this her Original Complaint against DR Horton ("Defendant"), and for cause therefore would show the Court as follows:

### I.  PARTIES

1.  Plaintiff Lynda Huffman (herein after "Huffman" or "Plaintiff") is an individual living in Harris County, Houston, Texas.

2.  Defendant DR HORTON, a/k/a D.R. HORTON - TEXAS, LTD., a/k/a D.R. HORTON, INC., a/k/a D.R. HORTON AMERICA'S BUILDER (herein after "DR Horton" or "Defendant") is a for-profit entity with significant presence located in Harris County, Texas.

3.  This Defendant may be served with process via registered agent, pursuant to the Texas Secretary of State: CT Corporation System, 1999 Bryan St. Ste. 900, Dallas, Texas 75201-3136.  Defendant is further commanded under the Texas Rules of Civil Procedure to appear under it's duly designated name of business, regardless of iteration.

## II.  EXHAUSTION OF ADMINISTRATIVE REMEDY

4.      Plaintiff now bring forth this cause of action timely compliance with her Statutory

Notice(s) of Right to Sue, as issued by the Equal Employment Opportunity Commission,

on or about March 8th, 2021. Hence this cause of action is timely filed.

5.      Pursuant to EEOC Charge No. 31C-2019-01287, Plaintiff's causes of action stem from

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, *et seq*, and 29

U.S.C. §623(a).

6.      Pursuant to TWC charge no. 1B19244, the Texas Workforce Commission issued a right

to bring suit on or about February 22nd, 2021. Both charges respective deadlines of 90 and

60 days have been met at the time of filing this Original Complaint.

## III.  JURISDICTION & VENUE

7.      Jurisdiction is proper pursuant to Texas Labor Code §§21.000 *et seq*.. All jurisdictional

prerequisites, pursuant to TRCP Rule 54, have been met. Defendant DR HORTON

qualifies as an "employer" under §21.002(8)(a) of the Texas Labor Code. Venue and

Jurisdiction are also proper in this district under 28 U.S.C. § 1391(b) as a substantial part

of the events or omissions giving rise to the claim occurred in this District.

8.      Venue is proper in Harris County, Texas because it is the county in which all or a

substantial part of the events or omissions giving rise to the Plaintiff's claims occurred

pursuant to Tex. Civ. Prac. & Rem. Code §15.002(a)(1), Harris is the County in which

the Plaintiff resides, and the Defendant, DR Horton, as for-profit entity, with offices

located within Harris County, in the State of Texas. (Tex. Civ. Prac. Rem. Code

§15.002(a)(3)). This cause also arises under Federal Question, pursuant to Plaintiff's

claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq*, and 29 U.S.C. §623(a), as well as Chapter 21 of the Texas Labor Code.

## IV.   FACTUAL ALLEGATIONS

1.   Plaintiff Lynda Huffman is a (i) Caucasian (ii) female, (iii) over forty [40] years of age.  At all times relevant, Ms. Huffman was over the age of forty.  Plaintiff began working for Defendant DR HORTON in 2003.  This employment continued for approximately five (5) years until 2008, following a brief separation of seven (7) years, wherein after she returned to work for another three (3) years, returning from 2015 through 2019.  Plaintiff's total tenure of employment by the Defendant is stipulated as nine (9) years. Despite DR Horton's known "no-rehire policy", Plaintiff was allowed to return to work in 2015, in her position as Sales Counselor / Sales Professional, due to her prior performance.

2.   Plaintiff held the position of Sales Counselor / Sales Professional for the tenure of her employment. In this position, she achieved quotas, met her goals as set out in her defined duties and responsibilities, and was generally achieving the sum and substance of her employment without the need for negative performance reviews, performance improvement plans, warnings, or coachings.

3.   On or about January 19th, 2019, Plaintiff experienced the only exception to her positive performance –  an Employee Counseling Report due to an aberrant rating of 67% by a "Secret Shopper".  On Plaintiff's personal knowledge, however, several other sales employees for the Defendant whom received ratings well below 67% were still employed by the Defendant at the time of incident.  On information and belief, these same employees remain employed by the Defendant to present date.

4.      On or about February 11th, 2019, the Plaintiff won her employer's quarterly contest of most homes sold by any current sales employee. This crystalized the Plaintiff's ability and performance within the sales record of the Houston-based employer.

5.      On this same date, Plaintiff attended a celebratory lunch with her then-co-worker, Ms. Billie Rodgers.  Ms. Rodgers, at all times relevant, was similarly situated in her position for the employer, and *under* the age of forty [40].

6.      An award meeting was held on the morning of the 11th, and did not conclude until 11:45am. As the entire sales staff was running behind schedule due to the awards, Plaintiff reached out to her Sales Manager, Ms. Karen Nickel, to get permission to go to lunch with Ms. Rodgers with the anticipation of returning to work later than their usual lunch-hour would permit. This was done verbally, and the Sales Manager agreed to allow the tardy delay in return to work for both Ms. Huffman and Ms. Rodgers.

7.      Ms. Nickle's permission carried the caveat that both sales employee's partners had to be present at their sales models, so that at least one employee would be present while the Plaintiff and Ms. Rodgers were away at their late lunch. Plaintiff and Rodgers agreed to this, as their partners were both in the sales models. Sometime between 1pm and 1:30pm, Ms. Rodgers texted Ms. Nickles and asked for the rest of the day off, under the pretense that Ms. Rodgers' daughter was not feeling well.

8.      Both the Plaintiff, and Ms. Rodgers, were ostensibly in violation of the employer's work policy regarding returning to their sales models, after lunch, and being counted as "late". As such, on February 11th, 2019, both the Plaintiff and Ms. Rodgers were placed on administrative leave that afternoon.

9.      On or about February 12th, 2019, both the Plaintiff and Ms. Rodgers were terminated.  The reason given to both the Plaintiff and Ms. Rodgers was "breaking company policy" – and the Plaintiff understood at the time, that it related to her being late to her work model after the above celebratory lunch.  This termination was via phone call to the Plaintiff from both Ms. Nickles and Ms. Colquitt. No concurrent documentation was given to the Plaintiff to memorialize the termination or issue a reason.

10.     Both the Plaintiff and Ms. Rodgers were allegedly terminated for this same infraction. These two individuals were similarly situated in their positions at DR Horton.   The only differentiation between them were (i) the Plaintiff's award winning performance metrics, and (ii) the fact that the Plaintiff was over the age of 40.  Otherwise both women (a) had the same position; (b) committed the same rule violation; and, (c) were both terminated for said violation.

11.     Sometime after her termination, the Plaintiff learned that Ms. Rodgers, an individual under the age of forty [40] at the time of incident, had been allowed reinstatement into her former position.  Upon learning of this fact, and later confirming it, Plaintiff reached out to the Defendant's corporate headquarters to request similar relief / dispensation, given the identical circumstances surrounding the Plaintiff's similar separation from employment as Ms. Rodgers'.

12.     On or about May 28th, 2019, Plaintiff called Soni Graves, the Vice President of DR Horton and asked to be reinstated into her former position, citing her identical comparator, Ms. Rodgers, and her subsequent return to work / re-hire.  Soni Graves instructed the Plaintiff to reach out to the DR Horton Corporate HR office in Dallas, Texas.  Plaintiff made multiple

attempts to communicate with the Houston, Texas (JJ Mobly) and Dallas, Texas (Brenda Colquitt) corporate HR offices, to no avail.

13. On or about June 28th, 2019, the Plaintiff finally received a response to her inquiries, via email, from the Dallas, Texas corporate offices. The brief exchange indicated that Ms. Huffman was terminated due to "a violation of work rules which led to disciplinary action" and that Ms. Huffman was listed as "ineligible for rehire" in her personnel file.

14. The reason for termination has evolved at multiple points prior to the Plaintiff bringing her claims before a court of competent jurisdiction. The **First** reason stated to the Plaintiff was her alleged infraction of the Defendant's so-called attendance / scheduling policy, i.e. due to her late return from lunch. The **Second** reason, issued to the Texas Workforce Commission when the Plaintiff attempted to seek unemployment benefits, was that her "performance was unsatisfactory." A reason inconsistent with the objective reality of the facts surrounding the Plaintiff's work history and performance as we know them – namely, her award obtained the day prior to her termination, and total dearth of any other work-related infractions.

15. Ms. Billie Rodgers and the Plaintiff were similarly situated and were terminated for the exact same policy infraction on February 11th, 2019. On information and belief, Ms. Rodgers had been previously coached for not making her sales goals, and/or for not securing an 80% score on her shop evaluation. Ms. Rodgers was deemed as being "rehireable", yet the Plaintiff was not. The only disparate factor at play was the age of these two employees. An exception was made for Ms. Rodgers, and it was taken in a fashion meant to circumvent the Plaintiff's legitimate concerns of age discrimination.

### V.      AGE DISCRIMINATION pursuant to TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, under the AGE DISCRIMINATION IN EMPLOYMENT ACT 29 U.S.C. § 623(a), and Chapter 21 of the Texas Labor Code, *in the alternative*

16.     Plaintiff hereby adopts all factual allegations above *in haec verba*.

### A. TITLE VII & 29 U.S.C. § 623(a)

17.     Pursuant to Title VII of the Civil Rights Act of 1964 and under the Age Discrimination in Employment Act 29 USC 623(a) "It shall be unlawful for an employer— (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age..." ( 29 U.S.C. § 623 *et seq* )

18.     In order to establish a *prima facie* case of employment discrimination, the Plaintiff must (i) establish that they are a member of a protected class, (ii) that he was qualified for the position at issue, (iii) that he was subjected to an adverse employment action, & (iv) that he was replaced by someone outside the protected class, or other similarly situated persons were treated more favorably. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007); *Okoye v. University of Texas Houston Health Science Center*, 245 F.3d 507, 512-13 (5th Cir. 2001). A claim of intentional discrimination may be proved by *either* direct or circumstantial evidence. (emphasis added) *Wallace v. Methodist Hosp. Sys*. 271 F.3d 212, 219 (5th Cir. 2001).

19.     Due to the fact that the Plaintiff has no *direct* evidence of age based discrimination by the Defendant, Plaintiff would argue that *circumstantial* evidence is more poignant, and would refer to the *McDonnell Douglas* shifting burden framework.  *McDonnell Douglas Corp v. Green,* 411 U.S. 792 (1973).  In cases of circumstantial evidence, courts usually follow the burden shifting analysis articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, wherein the court gives primary consideration to the Plaintiff's substantiated claims before allowing the Defendant to refute their argument with an allegedly legitimate reason for the employment action.

20.     Ms. Huffman, an individual over the age of 40 at the time of incident, has established a *prima facie* case, as outlined above by, not only by the tenants of 29 U.S.C. § 623(a) , but also as clearly set out by *McCoy & Okoye.* Her direct comparator, a woman *under* 40 years of age at the time of issue, was not only *not* similarly situated, but also terminated for the exact same infraction, on the exact same day. Yet that younger individual was allowed to resume her employment with the Defendant, despite it's alleged no-re-hire policies, and the denial of the same allowance to the Plaintiff who had so recently proven her performance and abilities.

**B.      CHAPTER 21 of the TEXAS LABOR CODE**

21.     Plaintiff hereby adopts all factual allegations above *in haec verba*.

22.     In compliance with Chapter 21 of the Texas Labor Code, §§ 21.051, 21.202; "DISCRIMINATION BY EMPLOYER.  An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or *age* if the employer:    (1)    fails or refuses to hire an individual, discharges an individual, or

discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment;  or  (2)  limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any *employment opportunity* or adversely affect in any other manner the status of an employee." TEXAS LABOR CODE. *Id*.(emphasis added)

23.    The Plaintiff mirrors her federal claims within the Texas Commission on Human Rights Act, or the TCHRA, as encompassed within Chapter 21 of the Texas Labor Code. Under the Texas Commission on Human Rights Act, as codified in Chapter 21 of the Texas Labor Code, "an unlawful employment practice is established when the complainant demonstrates that... *age* was a *motivating factor* for an employment practice, even if other factors also motivated the practice."  Tex. Labor Code § 21.125 (emphasis added) [1]

24.    As the 5th circuit has, time and again, allowed Title VII arguments and case law to stand as a guideline for state level causes of action brought forth under Chapter 21 of the Texas Labor Code, Plaintiff will refrain from duplicative arguments and causal arguments and refer to Section A as crafted above.

## VI.    INFERENCE OF PRETEXT

25.    Plaintiff would argue that her termination from employment was merely pretextual, and that the motivating factor behind her termination was neither performance-based, as countered by her own performance history, nor policy-based, as her similarly situated comparator was allowed to be re-hired after committing the same policy infraction at the same time.

---

[1] Amending the original "because of" threshold, replacing it with a mere "motivating factor" burden of proof. *See* Tex. Lab. Code **Sec. 21.125.** 'CLARIFYING PROHIBITION AGAINST IMPERMISSIBLE CONSIDERATION OF RACE, COLOR, SEX, NATIONAL ORIGIN, RELIGION, AGE, OR *DISABILITY* IN EMPLOYMENT PRACTICES'

26.   Ms. Huffman would reiterate her contention that, despite having committed the same policy infraction as her similarly situated comparator, the only difference between them is their ages at the time of incident.  Alleging that Ms. Huffman's "performance" was the cause for her termination, within 48 hours of her receiving a company award for that exact same performance, is the definition preposterous.

27.   "[W]hen an employer's stated motivation for an adverse employment decision involves the employee's *performance*, but there is *no supporting documentation*, a jury can reasonably infer pretext." (Emphasis added)  See *Lloyd* v. *Georgia Gulf Corp.*, 961 F.2d 1190, 1195 (5th Cir. 1992); (citing *Walther* v. *Lone Star Gas Co.*, 952 F.2d 119, 124 (5th Cir. 1992); *Hansard* v. *Pepsi-Cola Metropolitan Bottling Co.*, 865 F.2d 1461, 1465( 5th Cir. 1989)("where the only evidence of intent is oral testimony, a jury could always choose to discredit it.").

28.   See  *Heinsohn* v. *Carabin & Shaw, P.C.*, 832 F.3d 224, 245 (5th Cir. 2016) (holding that summary judgment was not proper in a discrimination case where the employer had *no* contemporaneous documentation to support its assertions of poor performance against the employee, and instead relied solely on *after-the-fact documentation* and *testimony from interested witnesses*)(emphasis added); see also *Burton* v. *Freescale Semiconductor, Inc.*, 798 F.3d at 239-40 (holding that the lack of contemporaneous documentation to support claims of poor performance may in appropriate cases be evidence of pretext, and reversing summary judgment that had been entered for the employer by the district court)

29.   For these reasons, the Plaintiff's case in chief shall survive summary judgment.

## VII.   JURY DEMAND

30.   Plaintiff hereby demands, and shall pay for, a trial by jury upon the merits of the case.

## VIII.   DAMAGES

31.   The damages under Title VII & 29 U.S.C. § 623(a) consist of back-pay, front-pay (or reinstatement), compensatory damages, liquidated damages, attorney's fees, and costs. Each component is explained below:

32.   **BACK PAY**.  Prevailing claimants under the anti-discrimination laws may recover lost back-pay and benefits.  *See Miller v. Raytheon Co.*, 716 F.3d 138, 146 (5th Cir. 2013). The purpose of back pay is to "make whole the injured party by placing that individual in the position he or she would have been in but for the discrimination." *Sellers v. Delgado Cmty. Coll.*, 839 F.2d 1132, 1136 (5th Cir. 1988).

33.   **FRONT PAY**.  "Front pay refers to future lost earnings." *Wal-Mart Stores v. Davis*, 979 S.W.2d 30, 45 (Tex. App.–Austin 1998, pet. denied).  Regarding the calculation of front-pay, the Fifth Circuit has stated that  "[f]ront pay is . . . calculated from the date of judgment to age 70, or the normal retirement age, and should reflect earnings in mitigation of damages." *Patterson*, 90 F.3d at 936 n. 8 (citing J. Hardin Marion, Legal and Equitable Remedies Under the Age Discrimination in Employment Act, 45 MD.L.REV. 298, 330–334 (1986)).  *See also Blum v. Witco Chem. Corp.*, 829 F.2d 367, 374 (3d Cir. 1987) ("In calculating a front pay award, the jury must consider the expected future damages caused by defendant's wrongful conduct from the date of judgment to retirement.").

34. **COMPENSATORY DAMAGES**.  Ms. Huffman has suffered future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, for which she seeks recovery in this lawsuit under Section 1981 and Title VII.  *See, e.g.*, *Salinas v. O'Neill*, 286 F.3d 827, 833 (5th Cir. 2002) (affirming $150,000.00 compensatory damages award under Section 1981 where the plaintiff did not receive a position because of his race); 42 U.S.C. § 1981A(a)(1) (providing for compensatory damages for such harms under Title VII).

35. **LIQUIDATED DAMAGES**. Punitive damages are not available under the ADEA. *Rogers v. Exxon Research and Engineering Co.*, 550 F.2d 834, 842 (3d Cir. 1977), overruled on other grounds by *Holliday v. Ketchum, MacLeod & Grove, Inc*., 584 F.2d 1221 (3d Cir. 1978) (en banc).    29 U.S.C. § 626(b) instead incorporates the liquidated damages provision of the Fair Labor Standards Act, 29 U.S.C. § 216(b). The statute provides that doubling of damages is **mandatory** if there is a finding that the defendant willfully violated the law. Cf. *Marrow v. Allstate Sec. & Investigative Services, Inc.*, 167 F.Supp.2d 838, 841 (E.D.Pa. 2001) (holding that punitive damages are available for claims of retaliation under the Equal Pay Act and Fair Labor Standards Act, and distinguishing ADEA actions, where punitive damages are not available for any claim). (emphasis added)

36. The amount of damages to be doubled under the ADEA liquidated damages provision does not include front pay. *Blum v. Witco Chem. Corp*., 829 F.2d 367, 373 (3d Cir. 1987) (noting that a front pay award "is the monetary equivalent of the equitable remedy of reinstatement" and therefore is not part of the "wages" that are to be doubled under the

terms of the statute).

37.     "Any employer who violates the provisions of section 215(a)(3) of this title shall be

liable for such legal or equitable relief as may be appropriate to effectuate the purposes of

section 215(a)(3) of this title, including without limitation employment, reinstatement,

promotion, and the payment of wages lost and an additional equal amount as *liquidated*

*damages*."  29 U.S.C. §216(b).(emphasis added)

38.     Fifth Circuit precedent cases have traditionally denied punitive damages under the Age

Discrimination in Employment Act (ADEA). (See *Dean v. Am. Sec. Ins. Co.*, 559. F.2d

1036 (5th Cir. 1977), barring such recoveries.)

39.     **EMOTIONAL DAMAGES**. Due to the unlawful discrimination and retaliation engaged

in by the Defendant, Mrs. Huffman has experienced concrete economic harm in

economic damages, as well as emotional distress. This has been made manifest in severe

damage to her professional reputation, and defamation of her character –  harm which

may be quantified by her severe loss in earning potential, as well as loss of enjoyment of

life and mental anguish.

40.     Courts in Texas have described mental anguish as a high degree of mental pain/anguish,

more than mere disappointment, resentment, embarrassment, or anger. Things such as

grief, severe disappointment, public humiliation, despair, shame, wounded pride, or

indignation are more like what the courts consider to be "mental anguish" in Texas. See

*Parkway Co. v. Woodruff*, 901 S.W.2d 434, 442 (Tex.1995).  One court allowed a

$1,000,000.00 verdict for mental anguish based on sleeplessness, ulcers, depression,

post-traumatic stress disorder, and fear and anxiety.

## VIX.    PRAYER

41.    Ms. Huffman asks that she be awarded a judgment against the Defendant for the

 following:

   a.    Actual damages including but not limited to pecuniary losses, non-pecuniary

   losses, Back-Pay, Front Pay, Compensatory Damages, and, Liquidated Damages;

   in the sum of **$350,000.00**; and,

   b.    Prejudgment and post-judgment interest;

   c.    Attorney's fees and court costs; and,

   d.    All other relief to which Plaintiff is entitled.


                                    Respectfully Submitted,


                                    _____/s/Julian Frachtman_____
                                    H. Julian Frachtman
                                    SDTX No.:    2695031
                                    SBN:    24087536
                                    tel: 832.499.0611
                                    fax: 713.651.0819
                                    Hfrachtmanlaw@gmail.com
                                    3100 Richmond, Ste 203
                                    Houston, Texas 77098

                                    ATTORNEY FOR PLAINTIFF
                                    LYNDA HUFFMAN